UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| | |
|---|---|
| SOUTHERN TRUST INSURANCE COMPANY, )<br><br>*Plaintiff/Counter-Defendant*, )<br><br>v. )<br><br>WILLIAM DYE, SALLY DYE *and* WILLIAM PATRICK DYE, )<br><br>*Defendants/Counter Plaintiffs*. ) | Case No. 4:09-cv-116<br><br>Judge Mattice |

## MEMORANDUM AND ORDER

Presently before the Court is Plaintiff's Motion for Summary Judgment [Court Doc. 15], filed on June 29, 2010. In response to that motion, Defendants filed a Rule 56(f) Motion in Opposition to Plaintiff's Motion for Summary Judgment [Court Doc. 17] ("Response") on July 6, 2010. In that motion, they argue that they need more discovery to be able to respond to the motion, including documents within Plaintiff's exclusive control. In support of that argument, they attach the affidavit of their counsel, Steven Sager, which lists the factual and legal assertions in the Complaint that Defendants contest, the affirmative defenses Defendants assert, and the materials–currently in Plaintiff's exclusive control–that Defendants would seek in discovery. (Court Doc. 17-1, Sager Aff. ¶¶ 3-4, 6-7.) Finally, in the affidavit, Defendants' counsel notes that, as of the date of its response, Defendants had only very recently conducted the initial scheduling conference and the discovery meeting required by Federal Rule of Civil Procedure 26(f). (Sager Aff. ¶ 9.)

Plaintiff filed its Response to Defendants' Rule 56(f) Motion in Opposition to Plaintiff's Motion for Summary Judgment [Court Doc. 19] ("Reply"), on July 8, 2010. In it,

it argues that "Defendants are in possession of every document cited to support the Plaintiff's Motion for Summary Judgment," and that "[e]ven with possession of such crucial documents pertaining to this case, Defendants claim they are still unable to show that there are material facts in dispute rendering summary judgment improper," despite the fact that these documents "establish conclusively whether or not a policy would be issued based on certain representations of an applicant." (*Id*. at 1-2.) Finally, Plaintiff "asserts that the discovery referenced in Paragraphs 6 and 7 of the Affidavit of Defendant's counsel has in fact been disclosed. Plaintiff further asserts that it has received no discovery requests from the Defendants following the June 25, 2010 scheduling conference." (*Id.* at 2.)

Rule 56(f) of the Federal Rules of Civil Procedure in effect when this motion was filed provided:

> **(f) When Affidavits Are Unavailable.** If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) deny the motion;
> (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
> (3) issue any other just order.

Fed. R. Civ. P. 56(f) (2010).[1]

The United States Court of Appeals for the Sixth Circuit has made clear that,

---

[1] This direction is now embodied in the substantially similar Fed. R. Civ. P. 56(d), which provides:
> **(d) When Facts Are Unavailable to the Nonmovant**. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d) (effective Dec. 1, 2010).

"[t]ypically, when the parties have no opportunity for discovery, denying the Rule 56(f) motion and ruling on a summary judgment motion is likely to be an abuse of discretion." *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008). The exceptions to this rule include "when the court deems as too vague the affidavits submitted in support of the motion," or where "further discovery would not have changed the legal and factual deficiencies." *Id.* (citing *Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2004) and *Maki v. Laakko*, 88 F.3d 361, 367 (6th Cir.1996) respectively.)

Neither of those exceptions apply in this case. First, the Sager Affidavit lists in detail both the factual and legal issues still contested and the materials it would seek to discover in exploring those contested issues, including "documents, underwriting materials, rating information, testimony, training materials, file materials and similar information to test the accuracy of the Plaintiff's assertions and also to establish the affirmative defenses." (Court Doc. 17-1, Sager Aff. ¶ 6.) Although Plaintiff "asserts that the discovery referenced in Paragraphs 6 and 7 of the Affidavit of Defendant's counsel has in fact been disclosed," it does not provide any affidavits or evidence to support this assertion that the entirety of the materials Defendants would seek have already been provided to Defendants. Further, the materials appended to the motion for summary judgment that Plaintiff claims would fulfill Defendants' stated discovery goals are not so exhaustive as obviously to fulfill the full scope of Defendants' requests–consisting of, as they do, only the affidavit of one of Plaintiff's underwriting employees and two pages of underwriting guidelines applicable to private passenger policies. (Court Doc. 16-3, Aff. of Therese Ellis & Ex. A.) Finally, none of Plaintiff's documents (nor any of its arguments) are responsive to Defendants' affirmative defenses, including Plaintiff's alleged waiver of its misrepresentation defense

by affirming coverage after discovering the misrepresentation and the agency relationship between Plaintiff and Templeton & Associates Insurance Agency and the role of that agency in construing the disputed portions of the application.

This also is not a situation where "further discovery would not have changed the legal and factual deficiencies." Even if Plaintiff's assertion that the documents appended to its motion for summary judgment "establish conclusively whether or not a policy would be issued based on certain representations of an applicant," is correct, the documents do not establish that the policy Defendant Sally Dye signed elicits the representations upon which Plaintiff premises its misrepresentation defense.

The policy, the affidavit of the underwriting employee, and the underwriting guidelines each contain differing, and sometimes contradictory, references to "residents," "dependents," "drivers," "operators," and "applicants." The very fact that the policy lists "residents" in the "Resident & Driver Information" section along with "dependents (licensed or not) and regular operators"–both of which involve questions of an individual's status as a licensed driver–introduces a significant amount of confusion, which confusion is only heightened when the very next box ("Accidents/Convictions") discusses "[y]our driving record" and "any driver shown above," and the rest of the policy refers only to "driver[s]" or "applicant[s]." (Court Doc. 1-1, Tenn. Personal Auto Appl.) In fact, Plaintiff's own briefing accuses Defendant Sally Dye of misrepresenting information on the policy while simultaneously quoting its own policy incorrectly. *Compare* (Court Doc. 16, Pl.'s Mem. in Supp. Mot. Summ. J. 8) ("Defendant Sally Dye . . . made a misrepresentation . . . [a]s she failed to disclose the presence of her adult son as a 'resident (licensed or not)' on the Application.") *with* (Court Doc. 1-1, Tenn. Personal Auto Appl.) ("Resident & Driver

Information (List all residents & dependents (licensed or not) and regular operators)").

Further, Plaintiff places substantial reliance on Defendant Sally Dye's statement that she "must not have looked at it real good" and the rule that the failure to read an application prepared by another does not insulate one from mistakes contained therein. (Court Doc. 16-2, Dep. of Sally Dye 26:6-7.) But Defendant Sally Dye also testified, that she was just asked for the information for "who was going to be driving the cars" and that, when reviewing the already-completed application before signing it, she "checked for address and everything being right." (*Id*. at 27:5-6 & 26:20-21.) One reasonable interpretation of the testimony and the documents produced thus far is that Defendant Sally Dye was asked to provide only certain information and, upon finding that information being recorded correctly in the relevant section, believed she had provided the information asked for in that section of the policy, especially where the requirements and meaning of that section are currently, at a minimum, in significant dispute. Given the dispute over the interpretation of this evidence and that no evidence has been adduced so far relating to the application and binding process and the scope of the agency relationship, this is certainly not a situation where "further discovery would not have changed the legal and factual deficiencies," especially as the evidence and allegations, as currently presented, seem to reveal several genuine disputes as to material facts, such as the interpretation of the policy language and the role of the agent.

Therefore, as of the date of the filings, Defendants had not had sufficient opportunity for discovery, so as to be able to properly address Plaintiff's assertions, and the limited evidence already produced reveals genuine disputes as to several material facts. Given this limited state of fact discovery and that Defendants supported their Rule 56(f) motion

with the detailed affidavit of their counsel outlining the additional discovery they would seek, Defendants' Rule 56(f) motion is well-taken and **WILL BE GRANTED**.

Another matter has arisen that must now be addressed, however. In reviewing the parties' filings while considering these pending motions, the Court noted the dearth of detail in the allegations in the Complaint and now has questions as to whether it even has the subject matter jurisdiction to hear the instant action. Because "subject-matter jurisdiction . . . involves a court's power to hear a case, [it] can never be forfeited or waived," and this Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (internal citations and quotation marks omitted).

For instance, Plaintiff asserts that it is "a foreign corporation licensed and authorized to do business in the State of Tennessee," but does not provide any indicia–the state in which it was incorporated, its principal place of business, etc.–as to its actual state of citizenship. Likewise, the Complaint makes the bare assertion that "the jurisdiction of this court is establish by virtue of the diversity of citizenship of the parties herein and that the damages in this case exceed $75,000.00," but never gives the value of the disputed claim. Unlike in most insurance coverage declaratory judgment actions, not only is there no underlying state action detailing the damages at issue, Defendants did not provide such an amount (or any additional detail whatsoever) in their Answer and Counterclaim [Court Doc. 11], and the evidence in the record is unclear as to whether Defendants have even filed a claim, let alone one that Plaintiff has rejected.

In a declaratory judgment action, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Freeland v. Liberty*

*Mut. Fire Ins. Co.*, 2011 WL 338039, at *2 (6th Cir. Feb. 4, 2011) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)). This value "is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation." *Id.* (internal citations and quotation marks omitted). Thus, as shown in *Freeland*, a bare assertion that one is seeking coverage for injuries under a policy providing more than $75,000 in coverage is not sufficient; the Court must look at the circumstances of the case to determine the actual amount in dispute. Further, if the Court has "concerns about the existence of subject matter jurisdiction," it may ask the Plaintiff to "expand upon the skeletal allegations of his complaint" and to provide testimony, documentation, or other evidence in support of the same. *Mitan v. Int'l Fid. Ins. Co.*, 23 F. App'x 292, 297-98 (6th Cir. 2001). As noted above, since subject matter jurisdiction cannot be waived, Defendants' failure to contest the amount in question does not end the inquiry.

In addition, the Court notes that Plaintiff brings this matter pursuant to the Tennessee Declaratory Judgment Act, Tenn. Code. Ann. § 29-14-101 *et seq*., but the relevance of that statute to proceedings in this Court is unclear. It is a well-established rule that both the federal and the Tennessee declaratory judgment acts are only procedural, in that they merely provided the courts to which their directives apply with the discretion to provide a declaratory judgment as an additional remedy. *See, e.g.*, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 138-39 (2007) ("the Act merely provided a different procedural tool that allowed the insurance company to bring an otherwise justiciable controversy before a federal court") (citing *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 240 (1937) ("the operation of the Declaratory Judgment Act is procedural only"));

*Dehoff v. Att'y Gen.*, 564 S.W.2d 361, 363 (Tenn. 1978) ("a declaratory judgment action is a mere procedural device by which various types of substantive claims may be asserted."). In fact, this Court has considered the very existence of this alternative state remedy as a factor weighing against this Court's exercise of discretion in other declaratory judgment actions. Therefore, it is unclear why this case was brought pursuant to the Tennessee Declaratory Judgment Act and not 28 U.S.C. §§ 2201-202. As it has been, however, the Court now needs the parties to brief the applicability of the Tennessee Declaratory Judgment Act to actions brought in federal court and any differences between the federal and Tennessee declaratory judgment acts as they apply in the instant case.[2]

Regardless of the particular declaratory judgment statute at issue, the final discretion to choose to entertain a declaratory judgment action rests in the trial court. Tenn. Code Ann. § 29-14-102(a) ("Courts of record within their respective jurisdictions *have the power* to declare rights, status, and other legal relations whether or not further relief is or could be claimed.") (emphasis added); *E. Sevier Cnty Util. Dist. of Sevier Cnty. v. Wachovia Bank & Trust Co.*, 570 S.W.2d 850, 852 (Tenn. 1978) ("Of course, whether or not a trial judge entertains an action for declaratory judgment is largely discretionary with him."); 28 U.S.C. § 2201 (providing that a court "*may* declare the rights and other legal relations of any interested party seeking such declaration") (emphasis added); *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004) (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942)).

---

[2] The Court is aware of its opinion in *Hanover Ins. Co. v. Green*, 4:05-cv-53, 2006 WL 1129387 (E.D. Tenn. April 25, 2006) but does not believe it informs the current discussion. Although that case also involved a claim brought solely pursuant to the Tennessee Declaratory Judgment Act, it is distinguishable from the instant matter in several respects, and the Court did not address the applicability of the Tennessee Declaratory Judgment Act to actions in federal court at all.

Although this statutory discretion is broad, it is not unbounded. Tennessee courts have not provided specific factors trial courts should use in the exercise of their discretion to refuse to entertain a declaratory judgment, other than noting that such discretion should not be applied "arbitrarily," but rather "with caution." *S. Ry. Co. v. Atlantic Coast Line R. Co.*, 352 S.W.2d 217, 219 (Tenn. 1961) (finding no abuse of discretion where "the Court does not act arbitrarily in refusing to entertain such a suit but exercises a sound discretion."); *Newsum v. Interstate Realty Co.*, 278 S.W. 56, 57 (Tenn. 1925) ("courts have a very wide discretion under these acts, which should be exercised with the utmost caution," and "a declaration may properly be refused if it can be made only after a judicial investigation of disputed facts.") (internal citations and quotation marks omitted). The United States Court of Appeals for the Sixth Circuit has provided such specific guidance to district courts faced with the decision of whether to hear a declaratory judgment claim pursuant to 28 U.S.C. §§ 2201-202, in *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). As the consideration of the *Grand Trunk* factors will help this Court's determination as to whether it should entertain this declaratory judgment action regardless of the precise declaratory judgment statute in question, the parties will also need to address, in their subject matter jurisdiction briefs, the application of the factors set forth in *Grand Trunk* and refined by its progeny.

## III.    CONCLUSION

Accordingly, and for the reasons stated above, Defendants' Rule 56(f) Motion in Opposition to Plaintiff's Motion for Summary Judgment [Court Doc. 17] is hereby **GRANTED** and Plaintiff's Motion for Summary Judgment [Court Doc. 15] is hereby

**DENIED**, with leave to refile at the conclusion of discovery. The Court is aware that the parties have undertaken some discovery, and the parties are **ON NOTICE** that they will be held to the Scheduling Order [Court Doc. 20] entered on July 13, 2010, absent a motion to modify showing good cause.

Further, the parties are **ORDERED** to submit to the Court briefs addressing whether the Court has subject matter jurisdiction over the instant action. Specifically, the parties shall address the matters outlined above, including the citizenship of the parties, the amount in controversy, the applicability of the Tennessee Declaratory Judgment Act to actions brought in federal court, and the application of the factors set forth in *Grand Trunk* and refined by its progeny to this action. Plaintiff shall submit its brief no later than **March 24, 2011**. Defendant shall submit his response no later than **April 7, 2011**, and Plaintiff shall submit a reply brief, if any, no later than **April 14, 2011**. Failure to submit briefs as ordered may result in sanctions up to and including dismissal with prejudice for failure to prosecute.

**SO ORDERED** this 10th day of March, 2011.

_____*/s/Harry S. Mattice, Jr.*_____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE